# PAUL LAIUPPA *v.* MARY MORITZ
## (SC 20798)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Dannehy, Js.

*Syllabus*

The plaintiff, who had sought to recover damages from the defendant for her alleged negligence in connection with a motor vehicle accident, appealed from the judgment of the Appellate Court, which upheld the trial court's granting of the defendant's motion for summary judgment and affirmed the trial court's judgment. The plaintiff claimed that the Appellate Court incorrectly concluded that the present action was not saved by the accidental failure of suit statute (§ 52-592) because his original action, which previously had been dismissed for insufficient service of process, was not commenced within the time limited by law, as required by § 52-592 (a). *Held*:

An action is "commenced" for purposes of § 52-592 (a) when a defendant has actual or effective notice that the action is pending through the defendant's receipt of the summons and complaint within the time permitted by law, even if such process was improperly served.

The plaintiff failed to establish that the defendant had actual or effective notice of the original action sufficient to commence the action for purposes of § 52-592 (a), as there was no evidence establishing that the defendant or her designated agent had received the summons and complaint within the time limited by law.

(*Two justices dissenting in one opinion*)

Argued December 13, 2023—officially released August 16, 2024*

---

* August 16, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Laiuppa *v.* Moritz

*Procedural History*

Action to recover damages for the defendant's alleged negligence, brought to the Superior Court in the judicial district of Hartford, where the court, *Hon. A. Susan Peck*, judge trial referee, granted the defendant's motion for summary judgment and, exercising the powers of the Superior Court, rendered judgment thereon, from which the plaintiff appealed to the Appellate Court, *Elgo* and *Flynn, Js.*, with *Cradle, J.*, concurring in the result, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*John L. Bonee III*, with whom was *Jesse A. Mangiardi*, for the appellant (plaintiff).

*Bridget M. Ciarlo*, for the appellee (defendant).

*Opinion*

MULLINS, J. This certified appeal requires us to construe General Statutes § 52-592, the accidental failure of suit statute, in order to determine whether the plaintiff, Paul Laiuppa, commenced his underlying civil action within the time limited by law. The plaintiff appeals from the judgment of the Appellate Court, which affirmed the trial court's decision to grant the motion for summary judgment filed by the defendant, Mary Moritz, on the ground that the original action was not "commenced within the time limited by law," as required by § 52-592 (a). On appeal, the plaintiff claims that the Appellate Court incorrectly concluded that the action was not "commenced" for purposes of § 52-592 (a) on the ground that the defendant did not receive a copy of the summons and complaint within the time period prescribed by the statute of limitations. We affirm the judgment of the Appellate Court.

This case arises from a motor vehicle accident between the plaintiff and the defendant. The accident took place

Laiuppa *v.* Moritz

on June 21, 2016. On the date of the accident, the defendant resided at the address listed on her driver's license that she presented to the police after the accident occurred—168 Turkey Hills Road in East Granby (property). Although she had continued to reside at the property for approximately eighteen months following the accident, on December 19, 2017, she became hospitalized. The defendant previously had granted Patricia A. M. Vinci the power to act on her behalf under a general power of attorney, which Vinci began exercising on December 20, 2017. Immediately following her hospitalization, the defendant moved to a nursing home facility in Windsor. Then, in January, 2018, the defendant relocated to another facility in Rhode Island; she never again resided at the property. On June 4, 2018, acting through Vinci, the defendant signed the necessary documents for the sale of the property. The sale closed on June 8, 2018, and the deed was recorded in the East Granby land records on June 11, 2018.

Several days after the deed was recorded, on June 14 or 15, 2018, the plaintiff attempted to commence a civil action (original action) against the defendant in connection with the motor vehicle accident by delivering the writ, summons and complaint to a Connecticut state marshal with direction to serve the defendant. The marshal was directed to serve the defendant at the property. Under the applicable statutes, the marshal had until no later than July 15, 2018, to effect service of process on the defendant.[1] Unbeknownst to the plaintiff

___

[1] General Statutes (Rev. to 2015) § 52-584 provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . ." Therefore, under that statute, the plaintiff's cause of action accrued on June 21, 2016, the date of the accident. As a result, the original action had to be brought by June 21, 2018, which would be within two years of the injury.

However, the marshal, during his deposition, indicated that the plaintiff's attorney had delivered the process to him prior to that date, on either June

Laiuppa *v.* Moritz

and his attorney, however, the defendant no longer resided at the property.

Nevertheless, on June 18, 2018, the marshal left a copy of the summons and complaint at the property. The property appeared to be inhabited, and there were no obvious signs that it had been abandoned or recently sold. At that time, the website of the assessor's office for the town of East Granby still listed the defendant as the owner of the property, and the property was the defendant's last known address on file with the Department of Motor Vehicles. Thereafter, the plaintiff's attorney filed the summons and complaint with the Superior Court.

At some point prior to July 3, 2018, the plaintiff's attorney notified the defendant's automobile insurance company about the pending action and forwarded the insurance company a copy of the summons and complaint.[2] On July 3, 2018, an attorney appointed by the defendant's automobile insurance company filed an

14 or 15, 2018. Even if we assume that process was delivered to the marshal on the later date, under General Statutes § 52-593a (a), the marshal had until July 15, 2018, to effect service of process on the defendant. See General Statutes § 52-593a (a) ("a cause or right of action shall not be lost because of the passage of the time limited by law within which the action may be brought, if the process to be served is personally delivered to a state marshal, constable or other proper officer within such time and the process is served, as provided by law, within thirty days of the delivery"). Correspondingly, so long as the defendant received actual notice of the original action by July 15, 2018, the plaintiff would have commenced the action within the time permitted by law. See, e.g., *Dorry* v. *Garden*, 313 Conn. 516, 534, 98 A.3d 55 (2014) ("if a defendant has actual notice within the thirty days in § 52-593a for a marshal to make service, the savings statute would operate to save the claim").

[2] The plaintiff submitted an affidavit of David Nielsen, who was employed by the law firm that represented the plaintiff to work on the plaintiff's personal injury file. Nielsen averred that he communicated with a representative from the defendant's automobile insurance company and that, sometime after he prepared the summons and complaint and sent those documents to the marshal for service, he sent a courtesy copy of the summons and complaint to the insurance company representative. Nielsen did not indicate the date on which he sent a copy of the summons and complaint to the

350 Conn. 457 NOVEMBER, 2024 461

Laiuppa *v.* Moritz

appearance on the defendant's behalf. Thereafter, the defendant's attorney filed interrogatories, requests for production of documents, and a motion for permission to file supplemental discovery.

Vinci first learned of the matter on July 13, 2018, by way of a letter dated July 5, 2018, sent by the defendant's automobile insurance carrier. Vinci averred that the letter "pertained to the [automobile] insurance carrier's reservation of rights with respect to one of the claims made against . . . the defendant. . . . A copy of the summons and complaint was not enclosed with the letter dated July 5, 2018.'' The reservation of rights letter was not submitted in connection with the summary judgment motion or the opposition and is not, therefore, in the record before us. Vinci did not receive a copy of the summons and complaint until July 17, 2018, which was at least two days beyond the time permitted by law. See footnote 1 of this opinion.

The defendant filed a motion to dismiss the complaint on the ground that the service of process was not sufficient and, therefore, that the trial court lacked personal jurisdiction over her. More specifically, the defendant claimed that the attempted abode service by the marshal on June 18, 2018, was defective because the defendant did not reside at the property on that date and she never received a copy of the summons and complaint. The trial court granted the defendant's motion to dismiss, concluding that the plaintiff's attempted abode service was legally defective because the defendant was no longer residing at the property at the time service was attempted.[3]

insurance company. But, because an attorney appointed by the defendant's automobile insurance company signed an appearance form on behalf of the defendant on July 2, 2018, the insurance company must have been notified of the complaint in the original action on or before that date.

[3] The plaintiff did not appeal from the judgment dismissing the original action. Therefore, the propriety of the trial court's decision on the motion to dismiss is not before this court.

Laiuppa *v.* Moritz

The plaintiff then filed the present action pursuant to § 52-592. The defendant filed an answer and a special defense in response, and, in her special defense, she asserted that the plaintiff's action was barred by the statute of limitations in General Statutes (Rev. to 2015) § 52-584. Thereafter, the defendant filed a motion for summary judgment. In that motion, the defendant asserted that there was no genuine issue of material fact regarding the fact that the plaintiff's original action was not "commenced within the time limited by law" for purposes of § 52-592 (a). Ultimately, the trial court concluded that the "undisputed facts [show] . . . that the defendant [and Vinci] did not receive effective, timely notice of the plaintiff's underlying [action]."

The trial court further found that "the defendant did not have actual notice within thirty days of delivery of the writ, summons and complaint to the marshal. In the reply to the plaintiff's objection to the motion for summary judgment, the defendant included the deposition of the marshal who attempted service in the original action. The marshal stated [that] he received the writ, summons and complaint on June 14 or 15, 2018. . . . General Statutes § 52-593a grants a marshal thirty days to make service if process is delivered to the marshal within the statute of limitations. . . . The uncontested facts show that [Vinci] received a copy of the summons and complaint on July 17, 2018, which is outside the thirty days granted by § 52-593a. Without deciding whether notice to [an agent] is effective [on] the principal, [the trial court concluded that] the notice in the [original] action was not sufficient to commence [that] action within the meaning of § 52-592." (Citation omitted; footnote omitted.) Accordingly, the trial court granted the defendant's motion for summary judgment and rendered judgment for the defendant.[4]

[4] The trial court initially denied the defendant's motion for summary judgment on the basis that there was a genuine issue of material fact as to whether the defendant had received actual and timely notice and was "on

350 Conn. 457 NOVEMBER, 2024 463

Laiuppa *v.* Moritz

The plaintiff appealed from the judgment of the trial court to the Appellate Court. On appeal, the plaintiff claimed that the trial court incorrectly had concluded that no "genuine issue of material fact exist[ed] as to whether the first action was 'commenced within the time limited by law,' as required by § 52-592 [a]."[5] *Laiuppa* v. *Moritz*, 216 Conn. App. 344, 355, 285 A.3d 391 (2022). Relying on a recent decision, *Kinity* v. *US Bancorp*, 212 Conn. App. 791, 852, 277 A.3d 200 (2022), a majority of the Appellate Court explained that "[t]he critical question, then, is whether the plaintiff in the present case provided the court with any evidence to demonstrate the existence of a genuine issue of material fact as to whether the defendant had actual or effective notice of the original action by way of receipt of the summons and complaint within the applicable limitation period." (Internal quotation marks omitted.) *Laiuppa* v. *Moritz*, supra, 365.

The Appellate Court majority then reasoned that, because the plaintiff failed to provide any evidence that the defendant herself or Vinci had received a copy of the summons and complaint within the time limited by law, there was no genuine issue of material fact as to whether the defendant had actual or effective notice for purposes of § 52-592.[6] See id., 365–73. Accordingly,

notice of the plaintiff's [original] action" because Vinci "learned of [that action] no later than July 13, 2018." The defendant filed a motion to reargue. After hearing argument from both parties, the trial court granted the motion to reargue, vacated its prior ruling, and granted the defendant's motion for summary judgment. Relying on case law, the trial court concluded that the defendant did not receive timely notice of the complaint because Vinci did not receive a copy of the summons and complaint until at least two days after the time limited by law.

[5] On appeal to the Appellate Court, "[t]he plaintiff also claim[ed] that the [trial] court [had] abused its discretion in granting the defendant's motion to reargue." *Laiuppa* v. *Moritz*, 216 Conn. App. 344, 373, 285 A.3d 391 (2022). The Appellate Court concluded that the trial court had not abused its discretion in granting the motion to reargue. Id., 373, 375–76. That issue is not before us.

[6] For purposes of its analysis, the Appellate Court assumed, without deciding, that "notice provided to a defendant's attorney-in-fact may be imputed

Laiuppa *v.* Moritz

the Appellate Court affirmed the judgment of the trial court. See id., 347, 376. Judge Cradle concurred, concluding that she disagreed with such a narrow interpretation of the statute and that receipt of the summons and complaint should not be the exclusive means by which an action may be commenced for purposes of § 52-592. See id., 378 (*Cradle, J.*, concurring in the result).

The plaintiff filed a petition for certification to appeal, which we granted, limited to the following issue: "Did the Appellate Court correctly conclude that the plaintiff's failed action did not come within . . . § 52-592 because it was never 'commenced' within the meaning of that statute?" *Laiuppa* v. *Moritz*, 346 Conn. 906, 288 A.3d 628 (2023). Our resolution of this question requires us to ascertain what the legislature intended by using the term "commenced" in § 52-592 (a).

The following legal principles and background are useful in the resolution of this appeal. "When we are called [on] to construe a statute that is implicated by a summary judgment motion, our review is plenary. . . . In determining the meaning of a statute, we look first to the text of the statute and its relationship to other statutes. General Statutes § 1-2z. If the text of the statute is not plain and unambiguous, we may consider extratextual sources of information such as the statute's legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . . Our fundamental objective is to ascertain the legislature's intent." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Doe* v. *West Hartford*, 328 Conn. 172, 181–82, 177 A.3d 1128 (2018).

to the defendant so as to constitute the commencement of an action pursuant to § 52-592." *Laiuppa* v. *Moritz*, supra, 216 Conn. App. 366 n.15.

Section 52-592, known as the savings statute, "is designed to [e]nsure to the diligent suitor the right to a hearing in court [until] he [or she] reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his [or her] adversary of a present purpose to maintain [the litigant's] rights before the courts." (Internal quotation marks omitted.) *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 733, 557 A.2d 116 (1989). "It is well established that the purpose of § 52-592 (a) is to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his [or her] day in court. . . . The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case [in which] it shall be manifest that a strict adherence to them will work surprise or injustice. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy [when] that can be brought about with due regard to necessary rules of procedure." (Internal quotation marks omitted.) *Larmel* v. *Metro North Commuter Railroad Co.*, 341 Conn. 332, 345, 267 A.3d 162 (2021), quoting *Rocco* v. *Garrison*, 268 Conn. 541, 558, 848 A.2d 352 (2004). "[T]he savings statute is remedial in nature . . . [and therefore] must be afforded a liberal construction in favor of those whom the legislature intended to benefit . . . ." (Citation omitted; internal quotation marks omitted.) *Dorry* v. *Garden*, 313 Conn. 516, 530, 98 A.3d 55 (2014).

Section 52-592 (a) provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction . . . the plaintiff

Laiuppa *v.* Moritz

. . . may commence a new action, except as provided in subsection (b) of this section, for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment.''

In construing the phrase ''commenced within the time limited by law'' in § 52-592 (a), we do not write on a clean slate. This court's prior decisions in *Rocco* v. *Garrison*, supra, 268 Conn. 541, and *Dorry* v. *Garden*, supra, 313 Conn. 516, are instructive with respect to the present analysis.

First, in *Rocco*, this court considered whether an action was commenced in a timely manner for purposes of the savings statute. See *Rocco* v. *Garrison*, supra, 268 Conn. 547. *Rocco* involved a motor vehicle accident in which the defendant was a resident of Pennsylvania. Id., 544. The plaintiffs' counsel attempted service under what is now rule 4 (d) (1) of the Federal Rules of Civil Procedure, which is intended to encourage parties to waive formal service of process to save costs. Id., 545–46. The plaintiffs' counsel followed the procedure and sent each of the items required under that federal rule, including the summons and complaint, via certified mail to the defendant's home address and received a return receipt from the United States Postal Service indicating that the items were delivered to the defendant's home address four days before the expiration of the applicable statute of limitations. Id., 546. The defendant did not sign and return the waiver of service form, and the statute of limitations expired before the plaintiffs' counsel could effect formal service of process. Id. The defendant then filed a motion for summary judgment in the plaintiffs' original federal action, which was granted because formal service of process was not made on the defendant during the two year period prescribed by the statute of limitations. Id.

The plaintiffs then commenced a second action in the Superior Court pursuant to § 52-592. Id. The defendant

Laiuppa *v.* Moritz

filed a motion for summary judgment, claiming that
"the plaintiffs' federal action had not been commenced
within the meaning of the savings statute due to a lack
of proper service" and, therefore, that "the plaintiffs'
second action was barred by the statute of limitations."
Id., 547. The trial court granted the defendant's motion.
Id.

On appeal, the plaintiffs asserted that their original
federal action was commenced in a timely manner for
purposes of § 52-592 because the defendant received
clear and unmistakable notice of that action when the
summons, complaint and related materials were deliv-
ered via certified mail to her home address. Id. The
defendant, on the other hand, asserted that an action
is not commenced if a defendant is not served properly.
See id., 547–48.

This court rejected the defendant's argument, con-
cluding that "[t]he defendant's interpretation of § 52-
592 would render a key portion of that statute meaning-
less. If the savings statute requires effective commence-
ment of the original action, and commencement requires
valid service of process, as the defendant argue[d], then
any failure of service of process would require us to
conclude that no action had been commenced and that
the statute does not apply. This would render superflu-
ous one of the principal purposes of the savings statute,
namely, to save those actions that have failed due to
insufficient service of process. Moreover, the language
of § 52-592 distinguishes between the commencement
of an action and insufficient service of process by pro-
viding that the action may fail following its commence-
ment because of insufficient service. To accept the view
that improper or insufficient service defeats such an
action would undermine the statute's clear and unam-
biguous meaning and preclude the filing of a second
action. We therefore conclude that the term 'com-
menced,' as used in § 52-592 [a] to describe an initial

Laiuppa *v.* Moritz

action that 'has failed . . . to be tried on its merits because of insufficient service' . . . cannot be construed to mean good, complete and sufficient service of process, as the defendant contend[ed].'' (Citation omitted; emphasis omitted.) Id., 550–51.

This court further reasoned that ''[a] review of the record . . . disclose[d] that, although the plaintiffs' counsel did not serve a formal summons [on] the defendant within the time period prescribed by the applicable statute of limitations, all of the requirements of [the applicable federal rule of civil procedure] were satisfied and all of the necessary papers to obtain a waiver of formal service were delivered to the defendant. That the defendant failed to sign and return the waiver [did] not detract from the fact that the plaintiffs' original [federal] action was 'commenced,' for purposes of the savings statute, when the defendant received actual notice of the action within the time period prescribed by the statute of limitations. Thus, in our view, although the original [federal] action was not commenced in a timely manner under the applicable statute of limitations due to insufficient service of process, it nevertheless was commenced for purposes of the savings statute.'' Id., 552–53.

This court's analysis in *Rocco* demonstrates that the phrase ''commenced within the time limited by law'' in § 52-592 (a) cannot mean effectuating proper service, or else the statute would be rendered useless. Instead, this court explained that ''effective notice'' to a defendant is sufficient. Id., 551.

In *Dorry*, this court had another opportunity to construe § 52-592. That case involved a wrongful death action; *Dorry* v. *Garden*, supra, 313 Conn. 518; and, in that case, ''the plaintiff sent a writ, summons and complaint to a marshal by overnight delivery and requested that the defendants be served in hand.'' Id., 520. Although

Laiuppa *v.* Moritz

the marshal indicated on the return of service that each defendant was served " 'in hand,' " the marshal actually left copies of the writ, summons and complaint in the offices of the defendants. Id. The trial court dismissed the first action, and, thereafter, the plaintiff commenced a second action pursuant to § 52-592. Id. The defendants then filed motions to dismiss, which the trial court granted on the basis that the first action was not " 'commenced within the time limited by law,' " as required by § 52-592 (a). Id., 524; see id., 520–21.

Relying on *Rocco*, this court explained that " 'effective notice' " of the original action is sufficient to commence the action for purposes of § 52-592; id., 528; and concluded that two of the defendants had received effective notice within the time period prescribed by the statute of limitations. See id., 530. Specifically, this court explained that those defendants "became aware of the first action and received a copy of the writ, summons and complaint . . . within the statute of limitations." Id., 529.

On appeal to this court, the plaintiff in the present case asserts that the Appellate Court incorrectly interpreted *Dorry* and *Rocco* to require receipt of the writ, summons and complaint within the statute of limitations in order for the action to be "commenced within the time limited by law" for purposes of § 52-592 (a). Instead, the plaintiff asserts that § 52-592 operates to save an action in which a good faith attempt at service of process has been made within the limitation period.

We cannot agree that the savings statute operates to save any action in which a good faith attempt at service of process has been made. Such a reading of § 52-592 and our case law would effectively eliminate any requirement that the action be "commenced," which, for purposes of § 52-592 (a), we have stated, means that the defendant must have actual or effective notice of the action against him or her. See *Dorry* v. *Garden*, supra,

Laiuppa *v.* Moritz

313 Conn. 528–30; *Rocco* v. *Garrison*, supra, 268 Conn. 551–52. Not only did both *Dorry* and *Rocco* rely on the fact that the defendant or the defendants had actual or effective notice, the importance of this requirement for the fair administration of our justice system cannot be questioned. As this court has explained, the "chief purpose [of service of process] is to ensure actual notice to the defendant that the action is pending." *Smith* v. *Smith*, 150 Conn. 15, 20, 183 A.2d 848 (1962). Although we acknowledge that the savings statute is remedial and should be broadly construed to effectuate its purpose; see, e.g., *Dorry* v. *Garden*, supra, 530; we cannot read it in such a way as to ignore the importance of providing notice to a defendant regarding an action brought against him or her.

A review of our case law demonstrates that we have construed the term "commenced" in § 52-592 (a) to mean actual or effective notice to a defendant that an action is pending through receipt of the summons and complaint. See *Dorry* v. *Garden*, supra, 313 Conn. 528–30; *Rocco* v. *Garrison*, supra, 268 Conn. 551–52. We take this opportunity to clarify what may not have been clear in *Dorry* and *Rocco*, namely, that receipt of the summons and complaint by the defendant *is required* in order for the action to have been "commenced" under § 52-592 (a). It does not matter that the summons and complaint were improperly served for purposes of the savings statute; it matters only that the defendant received those documents within the time permitted by law, even if they were received through improper means.

In the present case, the plaintiff has failed to establish an evidentiary basis to demonstrate that there was a genuine issue of material fact as to whether he was entitled to invoke § 52-592 (a). Specifically, the plaintiff has not established that he had commenced the original action by giving the defendant a copy of the summons

Laiuppa *v.* Moritz

and complaint within the time limited by law, specifically, by July 15, 2018. See footnote 1 of this opinion. First, it is undisputed that the marshal's attempt at abode service was not sufficient because, at that time, the defendant no longer owned or resided at the property, and there was no evidence that she nevertheless received the documents. Second, the plaintiff failed to establish that Vinci had received a copy of the summons and complaint during the time permitted by law. Instead, Vinci submitted two affidavits in which she averred that she did not receive a copy of the summons and complaint until July 17, 2018, which was at least two days after the statute of limitations had expired.

Although Vinci initially learned of the original action on July 13, 2018, which was within the limitation period, through a reservation of rights letter sent by the defendant's insurance carrier, the letter was never submitted as an exhibit and is not part of the court file. Thus, we know only what Vinci averred about the letter. In her affidavit, Vinci averred that the reservation of rights letter "pertained to the [automobile] insurance carrier's reservation of rights with respect to one of the claims made against . . . the defendant" and that "[a] copy of the summons and complaint was not enclosed with the letter . . . ." Thus, on this record, Vinci's receipt of the reservation of rights letter on July 13, 2018, without a copy of the summons and complaint, did not serve to commence the original action.

We conclude that receipt of a summons and complaint by a defendant within the time period required by law, regardless of the manner of receipt, is necessary to commence an action for purposes of § 52-592. In other words, through receipt of the summons and complaint, the defendant not only knows of the existence of the action, but also knows the identity of the parties, the nature of the claims brought against him or her, and the court in which the claims are being brought,

Laiuppa *v.* Moritz

so that the defendant can protect his or her rights and defend the action. Without evidence establishing that the defendant herself had received the summons and complaint within the time limited by law, we cannot conclude that the plaintiff established that the defendant had notice of the original action sufficient to commence the action for purposes of § 52-592.[7]

The judgment of the Appellate Court is affirmed.

In this opinion ROBINSON, C. J., and McDONALD, ALEXANDER and DANNEHY, Js., concurred.

ECKER, J., with whom D'AURIA, J., joins, dissenting. I would join the majority opinion but for one stubborn fact, which is that lawyers for the defendant, Mary Moritz, entered an appearance on her behalf in the original action on July 3, 2018, eleven days before the expiration of the statute of limitations. In my view, the appearance of the defendant through counsel unequivocally establishes that the defendant received actual or effective notice of the claim, in all its particulars, to bring the case within the scope of our savings statute, General Statutes § 52-592, in accordance with *Rocco* v. *Garrison*, 268 Conn. 541, 550–53, 558, 848 A.2d 352 (2004), and *Dorry* v. *Garden*, 313 Conn. 516, 526–530,

_____

[7] The dissent concludes that the original action was commenced because the attorney hired by the defendant's automobile insurance company had entered an appearance on behalf of the defendant within the time limited by law, and the attorney is an agent of the defendant, so the attorney's knowledge should be attributed to the defendant. We disagree. As we explained herein, we conclude that § 52-592 requires that the defendant himself or herself receive a copy of the summons and complaint within the time limited by law. The plaintiff has failed to present any evidence that the defendant had received a copy of the summons and complaint from her attorney or otherwise during the time limited by law. Even if we were to agree with the dissent that the knowledge of the defendant's attorney about the original action can be imputed to the defendant, that is not enough because there is no evidence that the defendant received a copy of the summons and complaint, which we conclude is necessary to commence an action. Therefore, the original action was not "commenced" for purposes of § 52-592 (a).

350 Conn. 457     NOVEMBER, 2024     473

Laiuppa *v.* Moritz

534–35, 98 A.3d 55 (2014). See *Laiuppa* v. *Moritz*, 216 Conn. App. 344, 377–79, 285 A.3d 391 (2022) (*Cradle, J.*, concurring in the result) (construing *Rocco* and *Dorry* to support conclusion that defendant in this case received actual or effective notice in original action).

This conclusion rests on three things that we know with absolute certainty. First, we know as a matter of fact that the defendant appeared in the original action eleven days before the statute of limitations lapsed when her lawyers filed an appearance on her behalf.[1] It is important to understand that the lawyers appeared on behalf of *the defendant,* not on behalf of her insurance company. Her lawyers owed the *defendant* an undivided and exclusive duty of loyalty; the fact that they may have been appointed or paid by the insurer has no bearing on the nature or extent of their agency relationship with the defendant or their ethical or professional duties to her. See, e.g., *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 61, 730 A.2d 51 (1999) ("we have long held that *even* when an insurer retains an attorney in order to defend a suit against an insured, the attorney's only allegiance is to the client, the insured" (emphasis in original)); *Higgins* v. *Karp*, 239 Conn. 802, 810, 687 A.2d 539 (1997) ("even when an attorney is compensated or expects to be compensated by a liability insurer, his or her duty of loyalty and representation nonetheless remains exclusively with the insured").[2]

---

[1] The appearance was a firm appearance, filed by the law firm of Nuzzo & Roberts, LLC. A firm appearance allows any lawyer in the law firm to represent the client in connection with any particular event or proceeding relating to the case. The firm appearance in this matter was signed by Attorney Bridget McCormack Ciarlo, who signed most, if not all, of the motions and other written court filings on behalf of the defendant in the original action. The record discloses that at least one other lawyer from the firm also played a significant role in representing the defendant in the original action.

[2] It is irrelevant for present purposes that the insurance company had notified the defendant that it was providing a defense while reserving its rights, to an unknown extent, to contest its contractual obligation to indem-

Laiuppa *v.* Moritz

The second thing we know with certainty is a point of law: when the subject matter of the information learned by an agent is within the scope of the agency, notice to the agent (here, the defendant's lawyers) is notice to the principal (here, the defendant, who is the client). The lawyers who appeared on behalf of the defendant indisputably had notice and knowledge of the entire contents of the complaint, in all of its particulars. That notice and knowledge is chargeable to the defendant as a matter of law. "[G]enerally, notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, the principal." (Internal quotation marks omitted.) *E. Udolf, Inc.* v. *Aetna Casualty & Surety Co.*, 214 Conn. 741, 745–46, 573 A.2d 1211 (1990). "As stated in the Restatement (Second) of Agency . . . 'a principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal or [on] which it is his duty to give the principal information.' " Id., 746, quoting 1 Restatement (Second), Agency § 272, p. 591 (1958); see *Link* v. *Wabash Railroad Co.*, 370 U.S. 626, 634, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) ("[in] our system of representative litigation . . . each party . . . is considered to have notice of all facts, notice of which can be charged [on] the [party's] attorney" (internal quotation marks omitted)).

This fundamental principle of agency law applies with full force to attorneys and their clients; indeed, it operates with greater force in the attorney-client context to the extent that an attorney is charged by the profes-

nify her for any loss. The issue on appeal is whether the defendant was given actual or effective notice of the original action, not whether the insurance company might ultimately contest its duty to indemnify her. The insurer's reservation of rights did not limit the scope or nature of the agency relationship between the lawyers and the defendant in the original action or the duties that the defendant's lawyers owed to her in connection with the original action.

Laiuppa *v.* Moritz

sional rules of ethics with a mandatory, affirmative obligation to keep the client reasonably informed about the matter. See, e.g., Rules of Professional Conduct 1.4 (requiring lawyer to inform and consult with client regarding matters within the scope of representation); see also 1 Restatement (Third), The Law Governing Lawyers § 28 and comment (b), pp. 207–209 (2000) (explicating general rule that knowledge of attorney is attributed to client).[3]

The third thing we know, finally, is an important principle of statutory construction that the majority acknowledges is applicable to this case but then proceeds to disregard. I will quote the principle precisely as described by the majority: "Section 52-592, known as the savings statute, is designed to [e]nsure to the diligent suitor the right to a hearing in court [until] he [or she] reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his [or her] adversary of a present purpose to maintain [the litigant's] rights before the courts. . . . *Isaac* v. *Mount Sinai Hospital*, 210 Conn. 721, 733, 557 A.2d 116 (1989). It is well established that the purpose of § 52-592 (a) is to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his [or her] day in court. . . . The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case [in which] it shall be manifest that a strict adherence to them will work surprise or injustice. . . . Our practice does not favor the termination of proceed-

___

[3] It would violate our ethics rules for an attorney to appear in a case on behalf of a putative client without authorization, and no allegation has ever been made that the lawyers appeared on the defendant's behalf without authority to do so. Indeed, the defendant is still represented on appeal by the same lawyers who originally appeared on her behalf in the original action on July 3, 2018.

Laiuppa *v.* Moritz

ings without a determination of the merits of the controversy [when] that can be brought about with due regard to necessary rules of procedure. . . . *Larmel* v. *Metro North Commuter Railroad Co.*, 341 Conn. 332, 345, 267 A.3d 162 (2021), quoting *Rocco* v. *Garrison*, [supra, 268 Conn. 558]. [T]he savings statute is remedial in nature . . . [and therefore] must be afforded a liberal construction in favor of those whom the legislature intended to benefit . . . . *Dorry* v. *Garden*, [supra, 313 Conn. 530].'' (Internal quotation marks omitted.)

In combination, these three points explain why the lawsuit filed by the plaintiff, Paul Laiuppa, comes within the scope of § 52-592. The defendant in the present case is charged as a matter of law with having notice and knowledge of the plaintiff's claims against her no later than July 3, 2018, when she appeared through counsel in the original action nearly two weeks before the statute of limitations lapsed. This state of affairs satisfied the requirement of actual or effective notice that brings the case within the scope of § 52-592 under the standard articulated by this court in *Rocco* v. *Garrison*, supra, 268 Conn. 550–53, and *Dorry* v. *Garden*, supra, 313 Conn. 526–30. See *Isaac* v. *Mount Sinai Hospital*, supra, 210 Conn. 733 (''[t]he important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts'' (internal quotation marks omitted)). This is true because the only purpose of such notice is to safeguard and enforce the requirement in § 52-592 (a) that the original action be ''commenced within the time limited by law . . . .'' The lawyers' appearance on behalf of the defendant in the original action demonstrates definitively that the purpose of the statute of limitations had been met in this case: the defendant had a law firm acting on her behalf, on a timely basis, to vigorously represent her interests in the lawsuit by gathering all available evidence and pre-

Laiuppa *v.* Moritz

senting all legal defenses to defeat the claims alleged in the complaint. "A plaintiff's timely filed action provides notice to the defendant and ensures that the defendant does not find itself in a situation [in which], because of the lapse of time, [the defendant] is unable to gather facts, evidence, and witnesses necessary to afford . . . a fair defense. . . . Statutes of limitations also allow persons, after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability . . . ." (Citations omitted; internal quotation marks omitted.) *Electrical Contractors, Inc.* v. *Ins. Co. of the State of Pennsylvania*, 314 Conn. 749, 768–69, 104 A.3d 713 (2014).

The majority has no persuasive response to these points. Instead, it relies on pronouncements, unaccompanied by explanation or justification, requiring the defendant's personal, physical receipt of the actual writ, summons, and complaint as necessary to satisfy the actual or effective notice requirement of *Rocco* and *Dorry* when there has been insufficient service of process. The question we must ask is where the majority finds its requirement that a case has not been "commenced" under § 52-592 (a) and, therefore, does not come within its scope, unless and until the legal process is physically delivered into the defendant's actual (not constructive) possession. The statute itself says nothing of the kind. To the contrary, it expressly provides that it applies when there has been "insufficient service" of process, a defect that often, though not always, will result in no physical delivery of the process to the defendant. General Statutes § 52-592 (a). Our case law on the subject, although providing no definitive answer to the question presented in this case, clearly teaches that actual or effective notice—not compliance with the statutes governing service of process—is the critical consideration that determines whether a lawsuit falls

Laiuppa *v.* Moritz

within the scope of § 52-592. Again, these cases hold that a lawsuit is "commenced" for purposes of § 52-592 (a) if the defendant received actual or effective notice of all material information contained in the writ, summons, and complaint. See *Dorry* v. *Garden*, supra, 313 Conn. 526–30, 534–35; *Rocco* v. *Garrison*, supra, 268 Conn. 550–53, 558. As Judge Cradle aptly observed in her concurring opinion in the Appellate Court, "[i]n neither [*Rocco* nor *Dorry*] . . . did [this] court hold that the receipt of a copy of the summons and complaint was *required* to commence an action pursuant to the savings statute. In other words, although [this court's] decisions in *Rocco* and *Dorry* hold that actual notice by way of receipt of a copy of the summons and complaint is *sufficient* to commence an action within the meaning of § 52-592, neither case establishes that [the] receipt of the summons and complaint is the *exclusive* manner by which an action may commence under the statute." (Emphasis in original.) *Laiuppa* v. *Moritz*, supra, 216 Conn. App. 377–78 (*Cradle, J.*, concurring in the result).

The majority misconstrues *Rocco* and *Dorry* as holding that actual or effective notice requires actual notice in the form of the defendant's personal receipt of the writ, summons, and complaint. Neither case imposes such a requirement. The issue in both *Rocco* and *Dorry* was not whether notice by way of actual, physical receipt was *required* to trigger application of the savings statute but whether such notice was *sufficient* to do so. Those cases unsurprisingly hold that actual receipt provides actual or effective notice and, therefore, is sufficient to trigger application of § 52-592. A sufficient condition, however, is not the same as a necessary condition, and neither *Rocco* nor *Dorry* goes beyond concluding that actual receipt of legal process was sufficient to bring the case within the scope of the savings statute. If the majority in the present case

Laiuppa *v.* Moritz

chooses to impose an actual receipt requirement, then it has the corresponding obligation to justify that holding. Our precedent does not carry that load.

The sole explanation the majority provides to justify its holding is its observation that, "through receipt of the summons and complaint, the defendant not only knows of the existence of the action, but also knows the identity of the parties, the nature of the claims against him or her, and the court in which the claims are being brought, so that the defendant can protect his or her rights and defend the action.'' This assertion demonstrates with remarkable precision why the majority reaches the wrong conclusion in the present case. As the majority acknowledges, the fundamental purpose of the notice requirement under § 52-592 is to provide the defendant with the necessary information, within the limitation period, "so that the defendant can protect his or her rights and defend the action.'' See, e.g., *Isaac* v. *Mount Sinai Hospital*, supra, 210 Conn. 733. The facts of the present case demonstrate conclusively that physical receipt of the writ, summons, and complaint is not the only means by which a defendant can obtain all of the information necessary to investigate the claims and to mount an effective defense on a timely basis. Even without the defendant's physical receipt of process, her lawyers filed appearances and began actively representing her interests in the original lawsuit weeks before the expiration of the statute of limitations. Notice also may be effective, for example, if the defendant is informed of the pendency of an action and provided with sufficient information to permit the investigation of the claims and the preparation of a defense. See, e.g., *Weinstein & Wisser, P.C.* v. *Cornelius*, Docket No. HHD-CV-15-6058159, 2015 WL 6558462, *6 (Conn. Super. October 7, 2015) (concluding that defendant had effective notice of action under § 52-592 "because he had notice of the judgment liens, went to the Superior Court

to make inquiry, had access to the court files, and knew enough to secure a copy of the return of service to initiate what was ultimately the successful process of dismissing the case against him'').

Investigating claims and preparing a defense are exactly what defense lawyers do for their clients, which is why I would conclude on this record that the official appearance of counsel for the defendant in the original action nearly two weeks before the expiration of the statute of limitations demonstrated that the defendant was provided with effective notice of that lawsuit and, therefore, that the original action was timely ''commenced'' within the meaning of § 52-592 (a). The goal of the savings statute is not to enforce the technical requirements of Connecticut law governing service of process, but to make certain that a plaintiff whose original action would have been timely but for certain procedural or jurisdictional defects (including insufficient service of process) will nonetheless have a chance to reinstitute the lawsuit so that it can be decided on the merits. See, e.g., *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 49, 12 A.3d 885 (2011) (''[T]he accidental failure of suit statute, now codified [at] § 52-592, originally was enacted in 1862; Public Acts 1862, c. 14; see *Baker* v. *Baningoso*, 134 Conn. 382, 386, 58 A.2d 5 (1948); to avoid the hardships arising from an unbending enforcement of limitation statutes. . . . Although there is no relevant printed legislative history about § 52-592 due to its age . . . it is well established in our long line of case law interpreting the statute in other contexts that § 52-592 (a) is remedial and is to be liberally interpreted.'' (Citations omitted; internal quotation marks omitted.)).

Lest there be any misunderstanding, none of the foregoing means that a lawyer is a client's agent for purposes of service of process, and nothing I say herein is inconsistent with the well established principle that,

Laiuppa *v.* Moritz

unless authorized by statute or consent, or waived by words or conduct, service of process on a party's attorney is defective. See, e.g., *Sodhi* v. *Nationwide Mutual Ins.*, Docket No. CV-96-0564554, 1998 WL 161166, *1 (Conn. Super. March 10, 1998) ("[i]n general . . . an attorney is not authorized by general principles of agency to accept service of original process [on] behalf of a client" (internal quotation marks omitted)), quoting *George* v. *Delpo*, Superior Court, judicial district of Waterbury, Docket No. CV-94-0124137 (January 2, 1997) (18 Conn. L. Rptr. 519, 519). Likewise, nothing in this opinion challenges the well established principle that the appearance of counsel does not waive a party's right to challenge the court's personal jurisdiction. See, e.g., *Pitchell* v. *Hartford*, 247 Conn. 422, 432, 722 A.2d 797 (1999) ("the filing of an appearance on behalf of a party, in and of itself, does not waive that party's personal jurisdiction claims" (footnote omitted)). The defendant moved to dismiss the original action for insufficient service of process, and the motion was granted, as it should have been. My point here is simply that dismissal of a lawsuit on procedural or even jurisdictional grounds in no way renders the case ineligible for resurrection under the savings statute.

Simply put, the issue before us does not ask us to inquire about the sufficiency of service of process necessary to commence an action under general principles of Connecticut law, or whether a lawyer may appear on a client's behalf to seek dismissal of the complaint for insufficient service of process depriving the court of personal jurisdiction over a defendant, or whether a plaintiff may effectively serve the defendant's lawyer with legal process. Instead, the issue that must be decided in the present case is whether, *on this record*, the defendant had actual or effective notice of the plaintiff's original action such that the action was "commenced" under § 52-592 (a). This involves a very

Laiuppa *v.* Moritz

different inquiry. See *Dorry* v. *Garden,* supra, 313 Conn. 529 ("in *Rocco,* this court recognized that the phrase 'commenced within the time limited by law' [in § 52-592 (a)] cannot mean effectuating proper service, and that effective notice to a defendant is sufficient"); *Rocco* v. *Garrison,* supra, 268 Conn. 550 ("If the savings statute requires effective commencement of the original action, and commencement requires valid service of process . . . then any failure of service of process would require us to conclude that no action had been commenced and that the statute does not apply. This would render superfluous one of the principal purposes of the savings statute, namely, to save those actions that have failed due to insufficient service of process.").[4]

A case should be decided in light of its particular facts. As a general proposition, a plaintiff may have difficulty proving that a defendant had effective notice sufficient to satisfy the requirements of § 52-592 without evidence of physical receipt of the writ, summons, and complaint. But it is extremely difficult for me to understand how it is possible to say that the defendant in the present case did not have effective notice of the original action when her lawyers appeared on her behalf and participated in the litigation that resulted in its dismissal. The defendant suffered no actual or even possible prejudice as a result of the defective service. To the contrary, the only difference that improper service made is that the

---

[4] Moreover, the present case involves more than mere notice to the defendant's counsel of the existence or contents of a writ, summons, and complaint. Counsel for the defendant actually appeared on behalf of the defendant in the original lawsuit and actively began litigating the case by filing, and obtaining a ruling on, a motion for permission to file supplemental discovery. The facts of the case therefore do not require us to decide whether the client receives effective notice of the lawsuit for purposes of § 52-592 when the lawyer receives, formally or informally, a copy of the writ, summons, and complaint but does not appear in the lawsuit on the client's behalf. Nor does this case involve any claim that the plaintiff failed to make a good faith effort in the original action to serve the defendant in accordance with law.

case was dismissed on that ground instead of proceeding to an adjudication on the merits. That point, in my view, perfectly describes why the case comes squarely within the scope of § 52-592.

I respectfully dissent.

————————————————